## TALBOT v. BLACKLEGE.

1. Fences: FENCE VIEWERS. The proceedings of the fence viewers, under
chapter 61 of the Revision of 1860, should not be measured with
technical nicety, but, like those before a justice of the peace, receive
indulgent consideration.

2. —— NOTICE: STATUTE CONSTRUED. Section 1529 of the Revision of 1860

does not, in terms, require a *written* notice, though, properly, it should be in writing and proceed from the fence viewers; but where it appears that a party, in fact, was notified, though verbally, and by the opposite party, and was present at the meeting of the fence viewers and made no objection, the statute is sufficiently complied with.

3. —— ADJACENT PROPRIETORS: EVASION. One of adjacent proprietors cannot evade the law in relation to the erection and maintenance of partition fences, by purposely making his fence a few feet from, instead of on, the dividing line.

4. —— STATUTE CONSTRUED: NOTICE. Under section 1530 of the Revision it is not necessary that the fence viewers notify a party who neglects to erect the portion of fence assigned him under the preceding section, of their meeting to ascertain the value of the fence which has been erected by the aggrieved party.

*Appeal from Jasper District Court.*

TUESDAY, JULY 9.

PARTITION FENCES: CONSTRUCTION OF CHAPTER 61: NOTICE, ETC.—Action by plaintiff to recover the value of a partition fence. Upon proper issues, the cause was submitted to the court, without a jury. The court below found from the evidence the following facts:

1. That plaintiff and defendant are the owners and occupiers of adjoining premises and improved lands, and that a controversy arose between them about their respective rights and obligations to erect and maintain a partition fence between their said premises.

2. That the plaintiff requested the fence viewers of the township in which the lands are situate, to meet and inquire into the matter, and divide said fence, and to assign to each his portion thereof, and the time within which each should be required to erect the same; and that said fence viewers, after due notice given to each party, did meet on the 5th day of April, A. D. 1865, and did inquire into the said matter, and did divide the said fence and assign to each his share thereof, and fix the time within which each party was required to erect

the same ; and that the division thus made, with the assignment of each one's share, and the order as to the time in which each party was required to erect his part, was, by the fence viewers, reduced to writing, and duly recorded in the office of the township clerk of the township in which the lands are situate, and that each party was verbally notified of all the above matters, and knew of the action of the fence viewers in the premises.

3. That the defendant failed and neglected to erect the share of the fence assigned to him within the time fixed by the said fence viewers, and after the expiration of the said time the plaintiff proceeded to erect the same, and did erect all the fence so assigned to the defendant, and that the fence viewers adjudged the said fence so erected by the plaintiff to be sufficient, and of the value of fifty dollars, and that the same was worth the said sum of fifty dollars, and the said fence viewers made a record of their findings in the matter, which was also duly recorded in the office of the township clerk of said township, correct copies of both of which said records are attached to plaintiff's petition, marked exhibits "A' and B."

4. That the defendant, shortly after the meeting of the fence viewers in the first instance, and shortly after the division of the fence, commenced to remove a fence that he had built nearly on the line between the two premises, the same being a portion of the fence assigned to him, and to relay it on his own lands, and from three to fifteen feet from the line between the two premises ; that this removal of the fence exposed the lands of the plaintiff, and in order to protect the same he was compelled to erect a fence along the whole line, including the share assigned to the defendant.

5. That the fence thus built by the defendant, and the fence built by the plaintiff, formed a lane between the two premises, which was used by the defendant for the

Talbot v. Blacklege.

purpose of getting to and from his place of residence, and in doing this he crossed over the unimproved lands of the plaintiff.

6. That defendant was present at the meeting of the fence viewers in the first instance, but had no notice of the same, except such as was given him verbally.

7. That a correct plat is given of the lands in controversy in plaintiff's bill of exceptions embodying the evidence in this cause.

8. That plaintiff paid the fence viewers four dollars and fifty cents for their services in the matter, and that plaintiff made a demand for the payment of the same, together with the value of the fence built by him on the share assigned to the defendants, of defendant before the commencement of this suit; that the above are all the facts found by the court from the evidence. Upon the above facts so found, the court found for the defendant, and rendered jugment against the plaintiff for costs of suit.

The plaintiff excepted to the decision against him, and appeals. All the evidence is in the record on this appeal.

*Winslow & Lindley* for the appellant.

*S. G. Smith* for the appellee.

DILLON, J.—I. Chapter 61 of the Revision, in relation to fences, has converted some of the offices and duties of good *neighborship*, into legal obligations. Its

1. FENCES: fence viewers.

substance and practical value are not to be destroyed by refinements and over-nice constructions. The fence viewers are made a local forum for the adjustment, upon the equitable principles recognized by the statute, of the differences between neighbors in relation to their fences. It is true that, the proceeding

being of a special character, the requirements of the statute must be followed. But the fence viewers are not usually men conversant with legal forms and modes of procedure; and this the legislature well knew, when it conferred upon them the power to arbitrate and decide controversies concerning partition fences. When exercising powers granted, their proceedings are to be viewed by the courts, as to all matters of form, with at least the same tender and indulgent consideration which is extended to proceedings before justices of the peace.

With these general considerations, we proceed to examine the objections made by the defendant, to a 2. —— notice: recovery against him. The first is, that he statute construed. had no legal notice of the meeting of the fence viewers. And here, defendant specifies two objections to the notice: First, that it should come from the fence viewers; and, second, that it could not be given or served by the plaintiff. Rev., §§ 1527, 1529, 2814.

The statute provides " that either party may apply to the fence viewers, who, after due notice to each party, may inquire into the matter, and assign each his share thereof, and direct the time within which each shall erect or repair his share." Rev., § 1529. The court below found from the evidence that, in fact, " due notice " was given to each party. The facts in relation to the notice, as shown by the evidence, are that the fence viewers, at the request of the plaintiff, met on the 5th day of April, 1865, at the *house of the defendant*, for the purpose of dividing the line fence and assigning to each his portion; that defendant, upon being asked by the fence viewers if he had received notice of their meeting at that time and place for the above purpose, answered that he had, and made no objection to the same; that the fence viewers then went out and examined the premises, and, after consultation, made a division, and assigned to each

the part of fence to be built by him, and then verbally notified each of their decision, and this decision was reduced to writing and recorded in the township records. The statute (§ 1529) does not, in terms, require a written notice, though properly it should be in writing, and proceed from the fence viewers. But in this case the defendant admitted to the fence viewers that he had been notified; made no objection to their action, and was present at their meeting and decision. We think that the object of the statute was here fairly met. The same remarks apply to the assignment of a portion of the fence that each was required to build. It is better that the assignment of the portion, and the direction as to time, required by section 1529, be put in writing, and a copy served upon each party to the controversy. But here the evidence fully shows, and the court finds, that each party was verbally notified of, and knew all about, the action and decision of the fence viewers in the premises; that their decision was reduced to writing on the same day, and duly recorded. Here, again, we hold that the object of the statute was fairly met. Under these circumstances we cannot hold the proceedings of the fence viewers void because they did not serve a copy of their decision on the defendant. Section 1529, which applies to the case in hand, does not make such a step (however advisable it may be to take it) indispensable to the validity of their proceedings. If the defendant had not been present when the decision was announced to him by the fence viewers, and if it had never been reduced to writing and recorded (under section 1536), a very different question would be presented.

There was an outside fence around the respective cultivated lands of the plaintiff and defendant, inclosing

3. —adjacent proprietors: evasion.
the same in common. The record shows that the defendant's action was either a direct

evasion of the decision of the fence viewers, or a positive refusal to comply with it. One of the adjacent proprietors cannot evade the law or defeat it, by purposely making his fence a few feet from, instead of on, the dividing line. Such a construction of the law would completely emasculate it. It would possess none of the essentials of a law operating upon the willing and unwilling alike. Such a construction would, as is well suggested in the appellant's argument, make the law, one which could only be enforced by the *grace* of one of the parties interested. It is stated by the appellant, in his written brief, that the court decided in the defendant's favor on the broad ground that a man has a right to do with his own property as he pleases, and that he cannot be legislatively compelled to build or contribute to build a division fence unless he is willing to do so. Defendant's counsel make no such objection to the law, and do not ask an affirmance of the judgment on the ground that the law is unconstitutional. Acts similar to ours are very common in the different States, and have not, so far as we know, been considered obnoxious to the objection suggested; we shall therefore assume the validity of the law, leaving the question on this head, if any there be, until it is made and its decision urged.

III. It is not found by the court below that the fence viewers gave the defendant notice of their meeting to

4. —— statute construed: notice.
ascertain the value of the fence. § 1530. The previous section (1529) expressly requires notice of the first meeting to assign each his share of the fence to be built. The next section omits to require such notice in relation to ascertaining the value of the fence. The statute which gives the mode and prescribes all the details of proceeding, does not provide for any such notice; to require it, would be a species of judicial legislation. The officers who administer the law, naturally follow it as it is

written out in the statute. To require what the statute does not require, would operate as a snare on parties and on men unlearned in the law, who are appointed to administer it. Express notice in one section (1529) being required, and in the other (1530) omitted, we must presume this was done by design. It is a proper case for the application of the maxim: "*expressio unius est exclusio alterius.*" On this subject, upon full examination and comparison of the respective arguments, we adopt the rule and approve the reasoning of the Supreme Court of Connecticut (*Edgerton* v. *Moore*, 28 Conn., 600 ; *Fox* v. *Beebe*, 24 Id., 271) in preference to the doctrine of the Supreme Court of Massachusetts, followed by the Supreme Court of Maine (*Scott* v. *Dickenson*, 14 Pick., 276 ; *Harris* v. *Sturdevant*, 29 Maine, 366). The conflicting views, and the arguments by which they are respectively supported, may be seen by a reference to the above cited cases ; and it is unnecessary that we should further enlarge upon the subject.

Reversed.